JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant appeals the trial court denying his petition for post-conviction relief and motion for leave to file "Motion for New Trial Instanter." For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In November 2000, defendant was convicted by a jury of one count of rape of a child under the age of thirteen (R.C. 2907.02) and one count of kidnaping (R.C. 2905.01) with a sexual motivation specification. The facts leading to defendant's convictions are fully set forth in this court's decision in his direct appeal: State v. Vasquez,
(November 2, 2001), Cuyahoga App. No. 79319. For purposes of the appeal at bar, the pertinent facts are as follows. On July 23, 2000, the nine-year-old victim in this case, and her father, a Cleveland police officer, were at Don Shaffer's house. Shaffer and the victim's father were best friends. Also at the house that day were Becky Egbertson, Shaffer's fiancee, her sister, Karra Vasquez, and her husband, the defendant in this case, and their two children.
 {¶ 3} At some point on the 23rd, the victim and defendant were alone when the following events transpired:
"Vasquez invited the victim to go downstairs into the basement to watchtelevision and to help him with his two small children. In the basementwas a bunk bed. The victim testified that she climbed onto the top bunkand that Vasquez also climbed onto the top bunk after removing the bunkladder. According to the victim, he then pushed her down with his armand, while holding his hand over her mouth, he pulled down her pants andunderwear and began licking her private spot. As he was doing this, histwo infant children were crawling around on the bottom bunk. He continuedthe assault until the victim's father called to her from the top of thestairs. The victim then put her clothes back on and went home."
 {¶ 4} Vasquez, 2001 Ohio App. Lexis 4910, at *3.
 {¶ 5} After several days, the victim told her father that defendant had sexually assaulted her. "The father called his partner at the police department to request that he come over to the house. He and his partner then talked with his daughter to explain the serious nature of the charges and to assure she was telling the truth. He then called 911."Vasquez, supra.
 {¶ 6} In the direct appeal to this court, defendant assigned various errors including that he had been denied effective assistance of trial counsel because his attorney failed to locate potential defense witnesses, failed to prepare a defense because he was overworked, failed to object to hearsay testimony, and elicited prejudicial testimony from one of the state's witnesses on cross-examination. On November 29, 2001, this court overruled all the assigned errors and affirmed defendant's convictions. Before the direct appeal was decided, however, defendant filed in the trial court a "Motion for Leave to File Motion for New Trial Instanter"[1] and a petition for post-conviction relief.[2]
 {¶ 7} While the direct appeal of Vasquez was pending, the trial court conducted a three-day hearing on defendant's petition for post-conviction relief and denied the petition on November 14, 2002. Thereafter, the court issued findings of fact and conclusions of law on December 6, 2002 and also denied defendant's "Motion for Leave to File Motion for New Trial Instanter." It is from these two orders defendant now appeals. Because the first two assignments of error are related, we address them together.
"First assignment of error: The trial court erred to the prejudice ofappellant when the court denied appellant's petition to vacate and setaside conviction when the petition asserted that appellant was denied hisconstitutional rights to effective assistance of counsel as guaranteed bythe U.S. and Ohio constitutions when appellant clearly demonstrated at anevidentiary hearing that appellant's trial counsel failed to investigatethe allegations, failed to locate and interview witnesses, failed toadequately prepare for trial, failed to present a defense in the case andappellant was prejudiced by that failure.
 Second assignment of error: The trial court erred to the prejudice ofappellant when the court appointed an attorney whose extensive caseloadprohibited the attorney from adequately investigating appellant's case andpreparing the case for trial, thereby denying appellant competent,effective assistance of counsel in violation of appellant's U.S. and Ohioconstitutional rights."
 {¶ 8} Defendant claims the trial court erred in denying his petition for post conviction relief because he received ineffective assistance of counsel both before and during his trial. Defendant argues that the evidence he presented dehors the trial record during the hearing on his petition for post conviction relief entitles him to a new trial.
 {¶ 9} R.C. 2953.21 provides the following procedure for post-conviction petitions:
"(A)(1) Any person who has been convicted of a criminal offense oradjudicated a delinquent child and who claims that there was such adenial or infringement of the person's rights as to render the judgmentvoid or voidable under the Ohio Constitution or the Constitution of theUnited States may file a petition in the court that imposed sentence,stating the grounds for relief relied upon, and asking the court tovacate or set aside the judgment or sentence or to grant otherappropriate relief. The petitioner may file a supporting affidavit andother documentary evidence in support of the claim for relief."
 {¶ 10} A reviewing court will not overrule a trial court's finding on a petition for post-conviction relief absent a showing of an abuse of discretion. State v. Davis (1999), 133 Ohio App.3d 511, 515,728 N.E.2d 1111. "An abuse of discretion connotes more than an error of law or judgment; it implies conduct that is unreasonable, arbitrary, or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
 {¶ 11} To determine whether a defendant has been denied hisSixth Amendment right to effective assistance of counsel, a court must decide "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Grahek, Cuyahoga App. No 81443, 2003-Ohio-2650 at ¶¶ 65-66 quoting State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of syllabus.
 {¶ 12} A defendant must demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances and that there exists a reasonable probability that, but for such deficiency, the outcome of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. A defendant bears the burden of proof on this issue because in Ohio a properly licensed attorney is presumed competent. Furthermore, a reviewing court need not analyze a defense counsel's strategic or tactical decisions if they are well within the range of professionally reasonable judgment. Bradley, supra.
 {¶ 13} In the case at bar, when defendant filed his petition for post-conviction relief, he incorporated all the exhibits he had filed in the trial court in support of his motion for leave to file motion for new trial instanter.[3] Months later, he also filed a supplemental memorandum adding several exhibits in support of the petition.
 {¶ 14} In all, the exhibits defendant presented dehors the trial record included the affidavits of Karra Vasquez, Becky Shaffer, Tammy Salopek, JoAnn Kitchen, her daughter Ashley Snyder, Tom Pavlish, defendant's private investigator, and defendant.
 {¶ 15} During the three-day hearing on defendant's petition for post-conviction relief, these same affiants testified as witnesses. According to defendant, the testimony of these people is the evidence dehors the record that, had his trial counsel been competent, he would have obtained and presented as part of his defense at trial. Defendant also argued his trial counsel was ineffective because he elicited damaging and prejudicial hearsay testimony on cross-examination from one of the state's witnesses, social worker Sally Weindorf. In Ohio, it is well settled that,
"[t]he presentation of competent, relevant, and material evidencedehors the record may defeat the application of res judicata. See Statev. Smith (1985), 17 Ohio St.3d 98, 101, 17 Ohio B. Rep. 219, 221,477 N.E.2d 1128, 1131-1132, fn. 1. However, a petition for postconvictionrelief is not the proper vehicle to raise issues that were or could havebeen determined on direct appeal. State v. Perry, supra,10 Ohio St.2d at 182, 39 Ohio Op.2d at 193, 226 N.E.2d at 109. "Evidence presented outsidethe record must meet some threshold standard of cogency; otherwise itwould be too easy to defeat the holding of Perry by simply attaching asexhibits evidence which is only marginally significant and does notadvance the petitioner's claim beyond mere hypothesis and a desire forfurther discovery." Coleman, supra, Hamilton App. No. C-900811, at 7. Toovercome the res judicata bar, evidence offered dehors the record mustdemonstrate that the petitioner could not have appealed theconstitutional claim based upon information in the original record.Franklin, supra, Hamilton App. No. C-930760, at 7."
 {¶ 16} State v. Lawson (1995), 103 Ohio App.3d 307, 315,659 N.E.2d 362, 368.
 {¶ 17} In the case at bar, when the trial court held its three-day hearing on defendant's petition for post conviction relief, it heard testimony from each of the affiants, other witnesses, and defendant's trial counsel, Donald Butler. The trial judge wrote a 29-page Findings of Fact and Conclusions of Law. In this very comprehensive document the trial court made the following factual determinations about the testimony it heard, in pertinent part:
Claim that Defense Counsel's Trial Preparation Was Lacking
"* * * Butler testified that after he was assigned to the case aboutsix weeks after arraignment, he reviewed the Court's file, the clerk'soffice docket (H.Tr. 98-100) met with his client, [sic] (H.Tr. 89-90),ascertained that his client would not sign a speedy trial waiver pursuantto the Court's concern about time (H.Tr. 94-95), and proceededimmediately to conduct research and prepare for trial. * * * Butler filedthe appropriate discovery motions * * * [and] * * * met with his clientat subsequent scheduled pre-trials * * *.
* * *"
(C)[sic] Claim that Counsel Failed to Subpoena Certain Witnesses forTrial
"* * * The defendant claimed in his original petition that counsel wasineffective for failing to subpoena his wife, Mrs. Karra Vasquez, and hissister-in-law, Becky Shaffer. In his supplemental Memo., he added JoAnnKitchen, Tammy Salopek, and Ashley Snyder as possible witnesses thatshould have been subpoenaed to testify.
* * *
* * * Butler explained that he didn't subpoena the family membersbecause they were uncooperative and he had to keep in mind the otherallegations of sexual molestation, specifically from his sister'sdaughter. * * * He also had to be concerned that family members would beaware of the rape allegation by his client's four-year-old niece inCalifornia * * *.
* * *
* * * JoAnn Kitchen testified that she told Don Butler she wasn't atthe Shaffer's the night of the rape or when [the victim] reported it, soshe had nothing to testify to (H.Tr. 204-219).
 * * * The defendant testified that while in County Jail, even he couldnot reach his wife, his sister-in-law Becky or his mother-in-law, JoAnnKitchen: none of them responded * * * [and] [h]is wife stopped visitinghim * * *.
* * *"
(D) Claim that Witnesses who Were Not Subpoenaed Would Have OfferedSubstantive Evidence of Defendant's Innocence
"* * *
Mrs. Karra Vasquez claimed she could not come forward at the time ofthe trial because social worker Sally Weindorf, nka Sally McHugh, and theCleveland Police Department were plotting against her and her husband inthis case. (H.Tr. 333-335) [sic].
* * *
Mrs. Vasquez stated that she left phone messages for Don Butler thatwent unanswered, but admitted that within two weeks of her husband'sarrest, she stopped visiting him in jail and * * * did not attend thetrial, the sexual predator hearing or the sentencing. (H.Tr. 329-330)[sic].
 Mrs. Vasquez testified that except for their children, her husband and[the victim] were alone in the basement of the Schaffer home [sic] isconsistent with [the victim's] testimony * * *.
 Rebecca "Becky" Shaffer * * * testified she and her husband had gone tobed and did not see the [victim or her mother and father] the night [thevictim] stated that Robert Vasquez raped her (H.Tr. 247).
* * *
[S]he also suspected [defendant] of sexually abusing her son (H.Tr.286-288).
* * *
Tammy Salopek testified she has known [the victim's father] since 1996* * * and knows Becky and Don Shaffer. (H.Tr. 143)[sic]. She testifiedthat the three families often got together to socialize * * *. Shedescribed [the victim's] character for trustworthiness and honesty bystating that she caught [the victim] lying to her on a few occasions andthat she is not extremely trustworthy. (H.Tr. 147-148) [sic].
* * *
Ashley Snyder, age 13, testified * * * she knows [the victim] prettywell * * *.
 She signed an affidavit saying that [the victim] tells a lot of stories* * *. [The victim] slept over her house in August of 2000 during whichtime she was perfectly fine. (H.Tr. 170-171) [sic].
* * *"
(E) Claim that Counsel Did Not Obtain A Speedy Trial Waiver
"* * *
The defendant testified that he didn't sign the speedy trial waiver * ** on the advice of a fellow inmate at the County Jail. * * *
 Vasquez was banking on the case running out of time and decided to takethat chance, as opposed to listening to his attorney. The fact that hischoice in retrospect may not have [sic] beneficial to him does not rendercounsel ineffective."[4]
 {¶ 18} When it made its conclusions of law, the trial court stated, in part:
"The Court finds that neither the testimony from Donald Butler or anyother witness, showed that Butler violated a professional duty asguaranteed by the Sixth Amendment to the United States Constitution or byArticle I, Section 10 of the Ohio Constitution. Butler's testimony notonly showed no failure in his obligation to prepare the case for trial ingeneral, but specifically concerning the subpoenaing of witnesses, histestimony and that of others showed that defendant's family membersrefused to cooperate with the defense.
* * *
Counsel is not ineffective for trying to contact defense witnesses whorefused to respond or otherwise help in the defense. He is notineffective for failing to subpoena witnesses whom he considers to beuncooperative and who refused to talk to him prior to trial — or infailing to subpoena witnesses to whom family members could have led him.He is not ineffective for failing to subpoena uncooperative witnesseswho, in his experience and professional judgment, would not be ofassistance to the defense."
 {¶ 19} The trial court further determined that the doctrine of res judicata barred defendant's arguments about his trial counsel's ineffectiveness for eliciting damaging and prejudicial hearsay testimony from social worker, Sally Weindorf. The court held that both issues were raised or could have been raised by defendant in his direct appeal inVasquez.
 {¶ 20} During his post-conviction hearing, defendant presented numerous witnesses who did not testify at his trial. Their absence, however, does not demonstrate his counsel was ineffective and that the outcome of his trial would have been different had they been witnesses during his trial.
 {¶ 21} On the contrary, the record shows that none of defendant's witnesses offered any testimony to support defendant's theory of innocence. None of their testimony challenges the victim's account of the events leading to defendant's convictions. We agree with the trial court's conclusion that "not one of the witnesses who testified — neither the defendant, his family or others — offered any testimony that could have changed the outcome of defendant's trial." Trial Court Findings of Fact and Conclusions of Law, p. 25.
 {¶ 22} We are also unpersuaded by plaintiff's claim that his counsel was ineffective because he was overworked and too busy to properly defend him at trial. We have already determined that none of defendant's evidence dehors the record, namely, the witnesses who testified at the post-conviction hearing, would have changed the outcome of his trial. Whether his schedule was busy or not, we find no evidence that his counsel failed to fully defend defendant at trial.
 {¶ 23} For the foregoing reasons, the trial court did not abuse its discretion when it denied his petition for post conviction relief. Defendant's first and second assignments of error are overruled.
"Third assignment of error: The trial court erred to the prejudice ofappellant when the court denied appellant's motion for leave to filemotion for new trial after appellant presented newly discovered evidencein his case."
 {¶ 24} Defendant argues the trial court erred in denying him leave to file a motion for new trial instanter, because he presented new evidence dehors the record in that motion. We disagree.
"A defendant seeking a new trial based on the ground of newlydiscovered evidence bears the burden of demonstrating to the trial courtthat the new evidence (1) discloses a strong probability that it willchange the result if a new trial is granted, (2) has been discoveredsince the trial, (3) is such as could not in the exercise of duediligence have been discovered before the trial, (4) is material to theissues, (5) is not merely cumulative to former evidence, and (6) does notmerely impeach or contradict the former evidence. State v. Petro (1947),148 Ohio St. 505, 76 N.E.2d 370; Hawkins, supra at 350."
 {¶ 25} State v. Blalock, Cuyahoga App. Nos. 82080, 82081, 2003-Ohio-3026, at ¶ 7.
 {¶ 26} Because we have already determined that the outcome of defendant's trial would not have been different had the various post-conviction witnesses testified at his trial, we conclude that defendant is therefore not entitled to a new trial.
 {¶ 27} Defendant's motion for leave to file motion for new trial instanter contains the same arguments and evidence dehors the record he used to support his petition for post-conviction relief. Accordingly, we overrule defendant's third assignment of error for the same reasons explained earlier.
"Fourth assignment of error: The trial court erred to the prejudice ofappellant when the trial court quashed appellant's subpoena for thetestimony of the complaining witness."
 {¶ 28} Defendant claims the trial court erred in quashing a subpoena for the victim to testify at his post-conviction hearing. Defendant maintains he was entitled to question the victim about whether she had made a prior and false allegation of sexual abuse against her uncle.
 {¶ 29} In State v. Boggs (1992), 63 Ohio St.3d 418, 588 N.E.2d 813, the Ohio Supreme Court addressed the question of "whether an alleged victim in a sexual assault case can be cross-examined as to prior false accusations of rape." Id., at 421. In response to this question, the Supreme Court of Ohio held:
"When the defense seeks to cross-examine on prior false accusations ofrape the burden is upon the defense to demonstrate that the accusationswere totally false and unfounded. Hence the initial inquiry must bewhether the accusations were actually made by the prosecutrix. Moreover,the trial court must also be satisfied that the prior allegations ofsexual misconduct were actually false or fabricated. That is, the trialcourt must ascertain whether any sexual activity took place, i.e., anactual rape or consensual sex. If it is established that either type ofactivity took place, the rape shield statute prohibits any furtherinquiry into this area. Only if it is determined that the prioraccusations were false because no sexual activity took place would therape shield law not bar further cross-examination."
 {¶ 30} Id., at 423.
 {¶ 31} In the case at bar, defendant called Ashley Snyder on direct examination in order to establish that the victim had made a prior and false accusation that her uncle had raped her. At the hearing, Ashley Snyder testified about what the victim had told her about her uncle.
"Q: Do you know whether or not, or since that conversation, and sincethe time you talked to [the victim] about this incident that occurred inthis basement with this fella that liked her and that who she liked, didshe ever tell you anything else about some bad things that occurred toher?
 A: Yes.
 Q: What did she tell you? And I want to remind you. You understand howserious this is in this courtroom. So I want to remind you that we wantyou to tell us exactly what was said, and I want this to be the truth.
* * *
A: I remember her telling me that — well, we were in the water atthe beach. I asked her why all the adults were like talking aboutsomething, and I wanted to know what they were talking about. And shetold me that while she was in New York for three weeks, I think, that shewas molested. And she said that she was molested by her uncle. And shetold me that he fingered her. That's all she really said.
 Q: You met with some guy by the name of Tom Pavlish. Remember?He is the private investigator?
 A: Yes.
* * *
Q: He presented you with an affidavit. Remember that?
 A: Yes.
* * *
Q: And in that affidavit there was some information about yourconclusion that [the victim] tells a lot of stories. Yes?
 A: Yes.
 Q. Why would you say that?
 Because like a lot of times that she has came over my house, her and mysister have like fought, like argued, and I could have been like standingright there and she could have did something and she would like lie rightto my face and say that she didn't do it. And she did that very often."
 {¶ 32} In the case at bar, Ashley Snyder's testimony fails to demonstrate that the victim's accusations about having been raped by her uncle were totally false and unfounded. Ashley Snyder's testimony casts doubt generally on the victim's veracity only in this case. Ms. Snyder said nothing about the victim ever admitting she had lied about what she told her about her uncle. Defendant has not shown that the molestation the victim described to her was false or unfounded.
 {¶ 33} Accordingly, under the evidentiary requirements set forth inBoggs, the trial court did not err in quashing the defendant's request to subpoena the victim to testify at the post conviction hearing. Defendant's fourth assignment of error is without merit.
"Fifth assignment of error: The trial court erred to the prejudice ofappellant when the trial court denied appellant's motion to place thedepartment of children and family services records that had been given tothe prosecutor under seal for appellate review."
 {¶ 34} Defendant further argues the trial court erred in conducting its own in camera inspection of the prosecutor's file from the Department of Children and Family Services and then denying his request to include that file as part of this appeal.
 {¶ 35} After conducting its inspection of the prosecutor's entire file, the trial court concluded that neither it nor the agency file from the Department of Children and Family Services contained any exculpatory material.[5] Without specifying what he believes to be part of that file, defendant nonetheless maintains that it must include something exculpatory.
 {¶ 36} Because defendant failed to object during the post conviction hearing, he has now waived all but plain error with respect to these matters. He must show, therefore, that, but for the alleged errors, the outcome of his trial clearly would have been otherwise. Bradyv. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; State v.Chinn, (1999), 85 Ohio St.3d 548, 1999-Ohio-288, 709 N.E.2d 1166.
 {¶ 37} First, he has not shown that the purportedly exculpatory material was not available to him during the pendency of his direct appeal. Accordingly, this argument is now barred under the doctrine of res judicata. Rakoczy, supra.
 {¶ 38} Second, defendant fails to point to anything in the record showing that the file contained anything exculpatory. We reject, therefore, defendant's reliance upon State v. Gau, (Dec. 11, 1998), Lake App. No. 97-L-197. In that case, the defendant actually produced evidence tending to show the state failed to turn over evidence that might have been exculpatory in nature. Defendant has not presented any evidence dehors the record that even resembles the exculpatory evidence presented in Gau.
 {¶ 39} Moreover, we reject defendant's claim that the trial court erred in failing to include this file under seal to allow this reviewing court to conduct that inspection. Defendant does not cite nor do we find any authority for defendant's position. To the contrary, a trial court is well within its authority to conduct an in camera inspection of any documents that may contain exculpatory material. An in camera inspection for exculpatory material is part of a trial court's responsibilities.State v. Lawson (1992), 64 Ohio St.3d 336, 595 N.E.2d 902; State v.Hood, Cuyahoga App. No. 80294, 2002-Ohio-4081.
 {¶ 40} For the foregoing reasons, we find no plain error and defendant's fifth assignment of error is therefore overruled.
Judgment accordingly.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Patricia A. Blackmon, P.J., and Timothy E. McMonagle, J., concur.
[1] Filed on July 23, 2001.
[2] Filed on October 9, 2001.
[3] The trial court docket shows that the notice of incorporation was filed on the same date defendant filed the petition for post-conviction relief — October 9, 2001.
[4] During the post-conviction hearing, defendant also argued his trial counsel was ineffective because he advised him not to testify at trial. That issue is not part of this appeal because defendant has not made it part of any error he has assigned in this matter.
[5] Tangentially, defendant is arguing the prosecutor's file should have been made available to him during his trial.