OPINION
{¶ 1} Defendant-appellant, J'Maine Carter, appeals from a Mahoning County Common Pleas Court judgment convicting him of two counts of felonious assault with gun specifications following a jury trial.
 {¶ 2} On February 25, 2002, Shon Rankin was at the Gas Mart on the corner of Dewey and South Avenue on Youngstown's south side. He was putting gas in his car while his girlfriend, Eugenia Tucker, and her seven-month old baby waited in the car. Appellant is the father of Eugenia's baby. The two had been involved in a two-year relationship that had ended shortly after J'Maine Jr. was born.
 {¶ 3} While Rankin was pumping the gas, a silver/gray car pulled up behind him. The driver of the car, who Rankin identified as appellant, was "mean mugging" Rankin, or looking at him like he caught him off guard. Rankin let appellant know that he was not caught off guard and showed him that he had a gun. Appellant, never getting out of his car, showed Rankin his gun. The two men exchanged words. Appellant then pulled out of the gas station onto South Avenue. When appellant approached a stoplight, he started shooting at Rankin. Rankin returned fire at appellant. In the meantime, Eugenia and her baby remained in the car, which Rankin was using as cover.
 {¶ 4} Neither Rankin nor appellant were hit. However, David Cobb was. Cobb was getting gas at the Gas Mart at the time. Bullets appellant fired struck Cobb in the neck and leg. Cobb was seriously injured and hospitalized for some time as a result.
 {¶ 5} A Mahoning County grand jury indicted appellant on four counts of felonious assault, second degree felonies in violation of R.C.2903.11(A)(2)(D), with firearm specifications on all counts, in violation of R.C. 2941.145(A). On August 21, 2003, a grand jury handed down a superseding indictment modifying the firearm specification from R.C.2941.145(A) to R.C. 2941.146(A).
 {¶ 6} The case proceeded to a jury trial on August 25, 2003. The jury returned guilty verdicts to the counts and specifications involving Rankin and Cobb and not guilty verdicts to the counts and specifications involving Eugenia and J'Maine Jr. The trial court sentenced appellant to eight years in prison for each of the felonious assault convictions, to be served concurrently, and five years for the firearm specifications, to be served consecutively, for a total of 13 years in prison. Appellant subsequently filed a timely notice of appeal on December 17, 2003.
 {¶ 7} Appellant raises five assignments of error, the first of which states:
 {¶ 8} "The trial court erred when it allowed the state of ohio to proceed on the superceding [SIC.] indictment outside of the appellant's statutory and constitutional right to a speedy trial."
 {¶ 9} Appellant was arrested on May 30, 2002. He was indicted on four counts of felonious assault with four firearm specifications under R.C.2941.145(A). R.C. 2941.145(A) provides for a firearm specification when the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense. Four days before trial, appellant was re-indicted to amend his firearm specification to that under R.C. 2941.146(A). R.C.2941.146(A) provides for a firearm specification when the offender commits a felony "that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another" by discharging a firearm from a motor vehicle. The difference between the two specifications is that R.C. 2941.145(A) carries with it a three-year mandatory prison term while R.C. 2941.146(A) carries with it a five-year mandatory prison term.
 {¶ 10} Appellant was held in jail until his trial date. Thus, plaintiff-appellee, the State of Ohio, was required to bring him to trial within 90 days. R.C. 2945.71(E). Appellant was not tried until August 25, 2003. However, appellant does not take issue with the tolling of his speedy trial time other than in one respect. During the time he was awaiting trial, the court ordered numerous continuances for various reasons including numerous requested continuances by appellant, appellant's motions for discovery, and the court's involvement in other trials. Appellant does not argue that any of these continuances were improper. During the time the continuances were granted, appellant was charged under the first indictment.
 {¶ 11} Appellant argues that because he was indicted under the first indictment when he agreed to the continuances, his assent only applied to the charges under that indictment. He contends that because he was re-indicted four days before trial with new specifications, his right to a speedy trial was violated because he was not indicted until some 400 days after his arrest.
 {¶ 12} The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right was made applicable to the States by the Fourteenth Amendment. Article I, Section 10 of the Ohio Constitution, also guarantees an accused the right to a speedy trial. Every person who is charged with an offense for which he may be deprived of his liberty or property is entitled to this fundamental right of a speedy trial. State v. Dunlap, 7th Dist. No. 01-CA-24, 2002-Ohio-3178, at ¶ 10.
 {¶ 13} Appellant cites to State v. Luff (1993), 85 Ohio App.3d 785,621 N.E.2d 493, for support. In Luff, the defendant was first indicted on five counts of aggravated murder, each with two death penalty specifications, and five counts of kidnapping. This case was assigned case No. 90-CR-014. The defendant executed a written waiver of speedy trial in case No. 90-CR-014 to continue the trial until October 1, 1990. On August 24, 1990, the defendant was again indicted on five counts of aggravated murder and five counts of kidnapping, stemming from the same facts. This indictment was identical to the first indictment except that it added another death penalty specification and added an additional count of aggravated robbery. This case was assigned case No. 90-CR-418. The State entered a nolle prosequi in case No. 90-CR-014 because of the re-indictment.
 {¶ 14} The defendant then filed a motion to dismiss the indictment in case No. 90-CR-418, arguing that his constitutional and statutory speedy trial rights were violated. He had never executed a separate waiver of his speedy trial rights under case No. 90-CR-418. The trial court sustained the defendant's motion in part, dismissing the added death penalty specification and the added aggravated robbery charge. The end result was that the second indictment now read exactly the same as the first indictment.
 {¶ 15} On appeal, the Sixth District found that the defendant's speedy trial waiver under the first indictment applied to the new indictment because the charges were identical once the trial court dismissed the added charge and specification. It distinguished the case from that ofState v. Adams (1989), 43 Ohio St.3d 67, 538 N.E.2d 1025.
 {¶ 16} In Adams, the defendant was originally charged with D.U.I. for violating R.C. 4511.19(A)(3), operating a vehicle while having a concentration of tenhundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath. The defendant executed a speedy trial waiver. Several months later, the trial court entered a nolle prosequi as to the defendant's charge of violating R.C. 4511.19(A)(3). The next day, appellant was charged with D.U.I. for violating R.C.4511.19(A)(1), operating a motor vehicle while under the influence of alcohol. This charge arose out of the same facts and circumstances as the original charge. The defendant filed a motion to dismiss on speedy trial grounds. The trial court denied the motion stating that the defendant's waiver applied to the new charge.
 {¶ 17} In reversing the defendant's conviction, the Ohio Supreme Court held, "When an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." Id. at the syllabus. It reasoned that when a defendant waives speedy trial, it must be done knowingly, voluntarily, and intelligently. Id. at 69. For a waiver to be entered knowingly, the court stated, "it is elementary that the defendant understand the nature of the charges against him, as well as know exactly what is being waived and the extent of the waiver." Id. It reasoned that although the charges were part of the same statute, they were nonetheless distinct charges that could involve different defenses. Id.
 {¶ 18} The Ohio Supreme Court revisited this issue in State v. Baker
(1997), 78 Ohio St.3d 108, 676 N.E.2d 883. In Baker, it held that "[i]n issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." Id. at the syllabus.
 {¶ 19} Appellant urges us to find this case analogous to Adams. He contends that the change in the firearm specifications amounted to new charges for which he had not waived his speedy trial rights.
 {¶ 20} While appellant was not indicted on a new charge under the second indictment, the firearm specifications were changed. Under the first indictment, the firearm specifications provided that appellant had a firearm on or about his person or under his control while he committed the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense. These specifications fell under R.C. 2941.145(A). Under the second indictment, the firearm specifications provided that appellant committed a felony "that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another" by discharging a firearm from a motor vehicle. These specifications fell under R.C. 2941.146(A).
 {¶ 21} These specifications require the proof of different elements. When the State re-indicted appellant with the new specifications, it added a new element for appellant to consider in his defense — that he discharged the firearm from a motor vehicle. It could also be said that the new specification additionally required the State to prove that appellant committed a felony that included purposely or knowingly caused or attempted to cause physical harm. However, given the fact that appellant was charged under the original indictment with felonious assault, he was already aware of these elements since they are required to prove felonious assault.
 {¶ 22} Additionally, this case is distinguishable from those where the State amends a charge in an indictment but does not change the name or identity of the offense. In those cases, there is no additional burden to the defendant's liberty. State v. Campbell, 150 Ohio App.3d 90,779 N.E.2d 811, 2002-Ohio-6064, at ¶ 24, affirmed by State v. Campbell,100 Ohio St.3d 361, 800 N.E.2d 356, 2003-Ohio-6804. In this case, however, the new firearm specifications have the same effect as a new charge. A new charge creates a new burden on the defendant's liberty interests. Id. Consequently, "the speedy-trial requirements applicable to the additional charge must commence with the defendant's arrest, and the waivers and extensions chargeable to the defendant with respect to the original charge cannot apply to the additional charge." Id. Here, the new indictment increased the penalty appellant was subject to from three years to five years on each specification. Thus, it created a new burden on appellant's liberty.
 {¶ 23} Furthermore, this case does not fall into the exception created by Baker, supra. Here, the new specification did not arise from different facts or new facts that the State did not know about at the time of the indictment. All of the witnesses reported that the gunshots were fired from a car traveling on South Avenue. And Detective Sergeant Ronald Rodway testified that the witnesses told him this at the scene. (Tr. 276-77). Thus, at the time of the original indictment, the State knew of these facts.
 {¶ 24} For these reasons, appellant's first assignment of error has merit.
 {¶ 25} Appellant's second assignment of error states:
 {¶ 26} "The trial court's decision to allow the state to proceed on the new indictment violated the appellant's constitutionally protected due process rights."
 {¶ 27} Here appellant argues that the decision to re-indict him was due to vindictiveness because he turned down plea deals. He claims that the State increased his potential punishment because of his refusal to plead guilty.
 {¶ 28} Since we have already determined that the new specifications in the superseding indictment violated appellant's speedy trial rights, we need not address this assignment of error. Thus, appellant's second assignment of error is moot.
 {¶ 29} Appellant's third assignment of error states:
 {¶ 30} "The defendant was denied a fair trial in violation of his constitutionally protected due process rights by the ineffective assistance of counsel."
 {¶ 31} Appellant contends that his trial counsel was ineffective because he failed to object to the authentication of certain evidence at trial.
 {¶ 32} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 33} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 34} Appellant contends that his counsel failed to make several objections during Detective Rodway's testimony that prejudiced the outcome of his trial. We will examine each alleged error in turn.
 {¶ 35} First, appellant points to Detective Rodway's testimony regarding certain physical evidence and his observations when he arrived at the scene of the crime. Detective Rodway testified that a spent casing was found in the street at Dewey and South Avenue. (Tr. 275). He stated, however, that he was not the one who found the casing, so he could not give its exact location. (Tr. 275). Appellant argues that given this testimony, the following question by the prosecutor and Detective Rodway's answer were improper:
 {¶ 36} "Q Yes. Are you able to tell the jury where that casing was found, would that be consistent with a casing that was fired — could have been fired from the left-hand southbound lane of South Avenue at the intersection of Dewey [where appellant's car was when the shots were fired]?
 {¶ 37} "A Yes." (Tr. 287).
 {¶ 38} Appellant argues that Detective Rodway could not offer an opinion about the shelling casing when he had no personal knowledge of where the casing was found. He claims that his counsel should have objected based on appellee not properly laying a foundation for the authentication of the casing. He points out that Detective Rodway did not collect the casing and did not testify that it was in the same or similar condition as when it was collected.
 {¶ 39} While Detective Rodway testified that he did not know the exact location where the casing was found, he did know that it was found "in the area right in the street at South and Dewey." (Tr. 275). This knowledge gave him a sufficient basis on which to conclude that a bullet could have been fired from the left-hand, southbound lane of South Avenue. Detective Rodway knew the general location of the casing. He did not need to know the exact location, e.g., seven-and-a-half feet from the curb, in order to conclude that a bullet could have been fired from a car in the left-hand lane of South Avenue. Thus, appellant's counsel did not act unreasonably in failing to object to this testimony.
 {¶ 40} Additionally, appellant takes issue with his counsel's failure to object to Detective Rodway's testimony about the photo lineup. He argues that his counsel failed to object to Detective Rodway's many hearsay statements. Specifically, appellant points first to Detective Rodway's testimony that both Rankin and Eugenia identified him as the shooter in a photo lineup. (Tr. 279-280).
 {¶ 41} Generally, hearsay is inadmissible. Evid.R. 802. Hearsay is an out-ofcourt statement offered in court to prove the truth of the matter asserted. Evid.R. 801(C). However, a statement is not hearsay if it is a prior statement by a witness and, "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification." Evid.R. 801(D)(1)(c).
 {¶ 42} In State v. Chinn (1999), 85 Ohio St.3d 548, 709 N.E.2d 1166, the Ohio Supreme Court addressed a very similar case. There a detective testified at trial regarding a witness's identification of the defendant at a lineup. Defense counsel objected, but the trial court overruled the objection and allowed the detective to testify that the witness identified the defendant in the lineup. The Supreme Court held that the statement was not hearsay because it fell within Evid.R. 801(D)(1)(c). Id. at 562. Quoting the court of appeals, the Court stated, "`[b]ecause [the witness] was "subject to cross-examination" on the lineup, regardless of whether she was actually ever subjected to such examination, [the detective's] testimony was not hearsay.' (Emphasis sic.)" Id., quoting State v. Chinn (Aug. 15, 1997), Montgomery App. No. 16206.
 {¶ 43} Thus, since both Rankin and Eugenia testified at trial and were subject to cross-examination and the statements were ones of identification of appellant made soon after the shooting, the statements were not hearsay. Because the statements were not hearsay, counsel was not ineffective for failing to object to them.
 {¶ 44} Appellant also argues that his counsel was ineffective for failing to address with Eugenia, on cross-examination, the issue of why she identified appellant in the photo lineup. However, counsel did an effective job of cross-examining Eugenia. Immediately upon cross-examining Eugenia, counsel asked her a series of questions establishing how well she knew appellant as follows:
 {¶ 45} "Q Miss Tucker, you and Mr. Carter had a relationship for approximately two years?
 {¶ 46} "A Yes.
 {¶ 47} "Q Okay. Obviously you had a child together so you know him very well?
 {¶ 48} "A Yes.
 {¶ 49} "Q Throughout that two-year period that you saw him or that you were dating him, how often would you say you saw him?
 {¶ 50} "A All the time.
 {¶ 51} "Q All the time?
 {¶ 52} "A Uh-huh." (Tr. 262).
 {¶ 53} Counsel also asked Eugenia questions about whether she saw appellant in the car. They exchanged the following dialogue:
 {¶ 54} "Q Had you ever seen J'Maine Carter in that car before?
 {¶ 55} "A No.
 {¶ 56} "Q And did you see J'Maine Carter on that day?
 {¶ 57} "A It was a dark-complected man.
 {¶ 58} "Q But, once again, did you see J'Maine?
 {¶ 59} "A I wasn't sure it was him, no. I can't say it was him.
 {¶ 60} "Q Okay. Well, I want to be clear though. Did you think it was him at all before Shon suggested that to you?
 {¶ 61} "A No, Shon told me it was him." (Tr. 263-64).
 {¶ 62} Counsel effectively called into question the credibility of Eugenia's identification of appellant to Detective Rodway. Counsel established that Eugenia knew appellant very well and asked her questions that one could reasonably presume might lead the jury to think that Eugenia did not see appellant at the scene but only identified him to Detective Rodway because Rankin told her appellant was the shooter. Thus, appellant's counsel was not ineffective in this respect.
 {¶ 63} Lastly, appellant points to Detective Rodway's testimony regarding Cobb and the photo lineup. By the time this case went to trial, Cobb had passed away. (Tr. 282). So obviously he did not testify. But Detective Rodway testified regarding his interview of Cobb. He testified that he tried several times to speak with Cobb. However, Detective Rodway was unable to speak with him until June because Cobb had been on a ventilator and had a trachea tube. (Tr. 281-82).
 {¶ 64} During the prosecutor's examination of Detective Rodway, he began to tell the jury that he showed Cobb the photo lineup. At this point appellant's counsel objected. (Tr. 281). Counsel then asked to approach the bench and a discussion was held out of the court reporter's hearing.
 {¶ 65} After the discussion, the prosecutor continued with his questioning of Detective Rodway. Detective Rodway testified about Cobb's injuries. (Tr. 282). He also testified that he showed Cobb the photo lineup. (Tr. 282). The prosecutor then asked Detective Rodway if, after his conversation with Cobb, he had any other suspects. Detective Rodway responded "no," and stated that appellant was the only suspect. (Tr. 282).
 {¶ 66} Here, appellant's counsel did object when he thought Detective Rodway's testimony might be improper. When the sidebar conference was over and the prosecutor questioned Detective Rodway again, he changed his question. (Tr. 281). So the court most likely sustained counsel's objection. The line of questioning that followed did not contain any hearsay. Hence, appellant's counsel did not act ineffectively in this instance.
 {¶ 67} Consequently, appellant's third assignment of error is without merit.
 {¶ 68} Appellant's fourth and fifth assignments of error share a common basis in law and fact. Therefore, we will address them together. They state, respectively:
 {¶ 69} "The defendant's conviction was based upon insufficient evidence."
 {¶ 70} "The appellant's conviction was against the manifest weight of the evidence."
 {¶ 71} Appellant argues that his convictions are against both the sufficiency and the weight of the evidence. For support, appellant points out that there was no physical evidence connecting him to the crime. He also asserts that we should not consider the improper hearsay that he referred to in his third assignment of error. Finally, appellant argues that the jury lost its way in applying the law. He contends that the jury could not have found him guilty of felonious assault as to two of the people but not as to the other two when all counts arose from the same situation. And he points to the jury's question regarding the definition of "knowingly" to argue that they were unsure of the law.
 {¶ 72} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. Statev. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113,684 N.E.2d 668.
 {¶ 73} Alternatively, in determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390, 678 N.E.2d 541.
 {¶ 74} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 75} The jury convicted appellant of two counts of felonious assault in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The jury also found that appellant committed the felonious assaults by discharging a firearm from a motor vehicle, thus meeting the firearm specification in R.C. 2941.146(A).
 {¶ 76} The following relevant testimony was adduced at trial and demonstrates that the jury's verdict was supported by sufficient evidence.
 {¶ 77} Rankin testified that while he was pumping gas into his car, appellant pulled up behind him and was looking at him like he was about to do something to him. (Tr. 218). At first, appellant said nothing but was "mean mugging" Rankin, meaning that he caught him off guard. (Tr. 219). Rankin told appellant that he was not off guard. (Tr. 219). Rankin then told appellant that he had his gun on him. (Tr. 219). Appellant responded by showing Rankin his gun and stating that he was "gangster" or "hard." (Tr. 219-220). Appellant then pulled out of the gas station onto South Avenue and began shooting. (Tr. 220-22). Rankin, still at the gas station, shot back. (Tr. 222). He ducked behind his car for cover while Eugenia and J'Maine Jr. remained in the car. (Tr. 222). Appellant fired approximately four shots. (Tr. 223). Rankin then got in his car and left. (Tr. 223).
 {¶ 78} This testimony supports the jury's finding that appellant knowingly attempted to cause physical harm to Rankin by means of a deadly weapon.
 {¶ 79} As to the felonious assault on Cobb, James Young testified. Young works at a car lot across the street from the Gas Mart. He testified that he heard arguing coming from the gas station. (Tr. 311). Young saw one man standing at a gas pump and another man in a light gray or blue Tracer. (Tr. 312). He heard the man in the car say, "you stole my woman." (Tr. 311, 314). He could not identify the man in the car, but could tell that he was a dark-colored, young male. (Tr. 313-14). Young saw the man in the car stick his gun out of the window and start firing. (Tr. 314). He then saw a bystander at the gas station get hit with the gunfire. (Tr. 314-15).
 {¶ 80} Additionally, Detective Rodway testified. He stated that at a photo lineup at the police station, both Rankin and Eugenia identified appellant as the shooter. (Tr. 279-280).
 {¶ 81} This testimony by Young and Detective Rodway was sufficient for the jury to conclude appellant was guilty of the felonious assault of Cobb.
 {¶ 82} Given that the State presented testimony going to the essential elements of felonious assault, the jury's verdict was supported by sufficient evidence. Therefore, appellant's fourth assignment of error is without merit.
 {¶ 83} We must next consider whether the verdict was against the manifest weight of the evidence. In doing so, we must consider the rest of the evidence.
 {¶ 84} Eugenia testified regarding what she saw that day. She stated that she heard Rankin hollering that he had his gun too. (Tr. 253). When she looked to see who he was talking to, she saw a dark-colored male with a gun in his hand in a silver or gray car. (Tr. 254). She stated that the car pulled out onto South Avenue and "shooting rang out." (Tr. 256). Eugenia jumped in the backseat to protect her baby. (Tr. 256). She stated that Rankin and the other man were both firing shots. (Tr. 257). Rankin then jumped back in the car and drove her to her sister's house. (Tr. 258).
 {¶ 85} Eugenia testified that she told the police that appellant was the man driving the other car because that is who Rankin told her the man was. (Tr. 259). She stated that she thought she told the police that she saw a dark-complected male. (Tr. 259). Eugenia stated that the man could have been appellant, because he was dark, but she did not actually see him. (Tr. 259). On cross-examination, Eugenia stated that she identified appellant because Rankin told her that it was appellant. (Tr. 263-64).
 {¶ 86} However, Detective Rodway testified that when he interviewed Eugenia, she identified appellant as the shooter. (Tr. 279, 299).
 {¶ 87} Additionally, appellant called several witnesses.
 {¶ 88} Yalonda Blackshear, appellant's sister testified first. She testified that when appellant learned that the police were looking for him, he turned himself in. (Tr. 346). She did not testify about any events that occurred on the day of the shooting.
 {¶ 89} Next, appellant called Detective Sergeant Daryl Martin. Detective Martin took Young's statement. (Tr. 357). He reviewed his report and stated that he did not note in his report that Young told him that he heard one of the men involved in the shooting say anything about stealing the other man's woman. (Tr. 358-59).
 {¶ 90} Finally, Officer Daniel Mikus testified. He interviewed potential witnesses at the scene. (Tr. 363). Officer Mikus stated that his report did not reveal that any of the witnesses relayed to him that they heard anyone say, "you stole my woman." (Tr. 364-65). However, Officer Mikus also stated that he did not interview Young. (Tr. 366).
 {¶ 91} Contrary to appellant's assertion, the jury could have found appellant guilty on two counts of felonious assault and not guilty on the other two counts of felonious assault. The witnesses' testimony demonstrated that appellant shot Cobb. Thus, he was guilty of the felonious assault on Cobb because he caused him physical harm by means of a deadly weapon. Rankin's testimony demonstrated that appellant was shooting at him. Thus, the jury could reasonably conclude that appellant attempted to cause physical harm to Rankin by means of a deadly weapon.
 {¶ 92} As to Eugenia and J'Maine Jr., however, there was no testimony that appellant was aware that they were in the car when he fired the shots at Rankin. And none of the shots hit Eugenia or J'Maine Jr. If appellant had no knowledge that they were in the car and none of the shots hit them, then the jury could have found that appellant did not have the requisite mens rea to commit felonious assault as to Eugenia and J'Maine Jr. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). While appellant points to the jury's question regarding the definition of "knowingly" to argue that they were unsure of the law, it seems the opposite is true. Applying the definition of "knowingly" to the facts at hand, reveals that the jury could have concluded that appellant was unaware of the two people in the car and since he did not injure them, he was not guilty of felonious assault as to those two people.
 {¶ 93} Thus, considering the evidence, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions must be reversed. Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 94} For the reasons stated above, the trial court's judgment is hereby affirmed as to appellant's felonious assault convictions. It is reversed as to the firearm specifications and appellant's sentence for the specifications is hereby vacated.
Waite, J., concurs.
DeGenaro, J., concurs.