OPINION
{¶ 1} Dante Allen is appealing from his conviction for felonious assault, carrying a concealed weapon, and having a weapon under disability. He assigns seven errors for our consideration:
 [I.] THE TRIAL COURT ERRED BY ALLOWING THE STATE TO IMPEACH ITS OWN WITNESS.
 [II] THE TRIAL COURT DENIED APPELLANT A FAIR AND IMPARTIAL TRIAL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION, *Page 2 
WHEN IT FAILED TO SUSTAIN APPELLANT'S MOTION TO STRIKE THE UNCERTAIN, UNRELIABLE AND PREJUDICIAL TESTIMONY BY STATE'S WITNESS DESHAWN PRICE.
 [III] THE TRIAL COURT GAVE AN INCORRECT LIMITING INSTRUCTION REGARDING AN INDICTMENT AND IMPROPERTY [sic] INSTRUCTED THE JURY THAT AN INDICTMENT WAS NOT EVIDENCE.
 [IV]THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY ON THE ISSUE OF IDENTIFICATION.
 [V] THE TRIAL COURT ERRED BY ADMITTING IMPROPER EVIDENCE THAT A WITNESS HAD BEEN THREATENED.
 [VI] THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S RULE 29 MOTION.
 [VII.] THE VERDICT WAS AGAINST THE MANEFEST [sic] WEIGHT OF THE EVIDENCE.
 {¶ 2} To develop the factual context for this case, we address the sixth and seventh assignments of error first.
 {¶ 3} On June 14, 2005, Matthew Sloan was shot while standing outside of his sister's house in Columbus, Ohio. The primary issue at trial was who shot Matthew Sloan. If Dante Allen was shown to be under a legal disability, and if he was the shooter, he was also guilty of having a weapon under disability. If Dante Allen was the shooter, for him to be guilty of carrying a concealed weapon, he had to have been demonstrated to have had the firearm concealed on his person or ready at hand at some point in time.
 {¶ 4} To prove that Dante Allen was the shooter and the related issues, the State of Ohio called seven witnesses to testify at trial. The first witness was Matthew Sloan, the man who was shot. *Page 3 
 {¶ 5} Matthew Sloan testified that he was dropping a young nephew off at his sister's house at 280 Hawkes Avenue at around midnight when he was approached by four people, three men and a woman. An argument started between Matthew's brother Irvin Sloan and Bradley Rivers, one of the men who approached. Rivers called out "get that thing," and started to walk away. Matthew Sloan was then shot. Sloan testified that Dante Allen was the person who shot him. Sloan denied knowing Dante Allen before that day.
 {¶ 6} Sloan then provided more detail by testifying that he saw Dante Allen pull the gun out of his pants, put it to Sloan's chest and shoot. Sloan reiterated that he was positive Dante Allen was the person who shot him.
 {¶ 7} On cross-examination, Sloan acknowledged that, on the date of the shooting, he did not know the names Bradley Rivers and Dante Allen because he did not know either man. He learned the names from the police investigator/detective. When initially interviewed, Sloan testified that the shooter was wearing a white shirt, black shorts and a red hat, which differed from the description of Dante Allen's clothing given on direct examination at trial. The description during direct examination centered on a hat and a football jersey.
 {¶ 8} On redirect examination, Sloan testified that his identification of Dante Allen as the shooter was based upon Dante Allen's face, not his clothing.
 {¶ 9} The second witness for the State of Ohio at trial was Irvin Sloan, Matthew Sloan's brother. Irvin was 17 years old when Matthew was shot. He and his brother and a nephew Deshawn Price were playing with a basketball in front of Irvin's sister's house when three men and a woman approached. One of the men was light skinned and that *Page 4 
man got into a disagreement with Irvin which seemed like it was going to become a physical fight. The light-skinned man asked for a weapon. Irvin went to get his sister and heard a shot. He found out his brother Matthew was shot. The four people who had approached then walked back toward Sullivant Avenue. Irvin thought the light-skinned man was the one who had shot his brother and told the police that although he did not see the actual shooting.
 {¶ 10} On cross-examination, Irvin acknowledged that he picked a picture of Bradley Rivers, the light-skinned man out as the shooter and identified him as such in an interview with police detectives two days after the shooting.
 {¶ 11} The third witness was Deshawn Price, a nephew of Matthew and Irvin Sloan. Deshawn was busier playing with a basketball than with paying attention to what else was going on. Deshawn never saw a gun, but heard gunshots and saw his uncle Matthew grab his (own) chest. Deshawn thought Dante Allen was the shooter because Dante was the person closest to Matthew right after the first shot. Deshawn then heard more shots.
 {¶ 12} Bradley Rivers was the next witness for the State of Ohio. Bradley Rivers was the person described as the light-skinned man. He had been indicted on a charge of felonious assault as a result of the shooting, but was permitted to enter a plea to a charge of discharging a firearm.
 {¶ 13} Rivers knew Dante Allen and Kelvin Matthews from a prior time when Rivers lived in Ohio. Rivers had been at a bar on Sullivant Avenue with them before the shooting. Rivers testified that he got drunk and that the other two men had a few drinks. They walked from the bar up Hawkes Avenue. Rivers did not have a gun when the *Page 5 
argument started. Dante Allen did. Rivers did not see the gun before the shooting occurred. Rivers denied being the shooter.
 {¶ 14} Rivers asked Dante for the gun and got it 20 to 30 seconds after the shooting. Rivers then fired the gun into the air approximately three times to make sure no one stopped them from leaving. The group then ran back toward Sullivant Avenue. Kelvin and Dante got in Kelvin's Suburban and Rivers kept running with the gun. He threw away the gun and later hooked up with Dante and Kelvin again. Eventually, Dante and Rivers were stopped by police.
 {¶ 15} On cross-examination, Rivers repeated the same information he stated on direct-examination, only in more detail, especially as to his plea agreement.
 {¶ 16} The next witness was Kelvin Matthews, who was the third man in the group with Rivers and Dante Allen. Matthews described meeting with Rivers and Dante Allen for drinks and pool. Dante Allen had a firearm which he stuck in his waistband. The three men went to a bar on Sullivant Avenue on the west side of Columbus and later began walking on Hawkes Avenue where they encountered the Sloans. Rivers got into a confrontation with the Sloans. Matthews then heard a shot. He testified "it was Dante." (Tr. Vol. III, at 461.)
 {¶ 17} Matthews then started running back toward the bar because his truck was parked in the area. Matthews testified he could see what Rivers was doing and Rivers did not shoot Matthew Sloan.
 {¶ 18} Matthews and Dante Allen talked after the shooting. Matthews asked "why would you do something that stupid." (Tr. Vol. III, at 470.) Dante Allen replied, "I told you all I wasn't no ho" which Matthews interpreted to mean Dante Allen was not a weak or *Page 6 
soft person. Id. at Tr. 470. Matthews was afraid his probation would be harmed as a result of his involvement with this shooting.
 {¶ 19} On cross-examination, Matthews indicated that the argument started because Rivers was intoxicated. Matthews acknowledged that he did not see the actual shot which harmed Matthew Sloan. Matthews also acknowledged a number of felony convictions in his past.
 {¶ 20} The next witness at trial was Todd Cramblett, a Columbus Police Officer. He was working in the Sullivant Avenue/Hawkes Avenue area on the day of the shooting. He stopped a white Chevrolet Suburban on June 14, 2005. The occupants were Bradley Rivers and Dante Allen. Rivers was arrested for driving without a license and the Suburban was impounded.
 {¶ 21} Michael Higgins, a Columbus Police Detective was the final witness. Detective Higgins described in detail the procedures followed in processing the scene of a shooting. He also described his role in processing the scene of the shooting of Matthew Sloan.
 {¶ 22} Detective Higgins presented photo arrays to Matthew Sloan while Sloan was still in the hospital. Sloan identified a picture of Bradley Rivers, but not a photo of Dante Allen. Irvin Sloan and Deshawn Price were also shown photo arrays. Irvin Sloan picked out a picture of Bradley Rivers, but not of Dante Allen. Deshawn Price also picked out a picture of Rivers, but not a picture of Dante Allen.
 {¶ 23} Detective Higgins did not switch the focus of the investigation to Dante Allen until Bradley Rivers was interviewed as a part of plea negotiations in Rivers' case. *Page 7 
 {¶ 24} On cross-examination, defense counsel questioned the thoroughness of the police investigation.
 {¶ 25} Based upon this testimony, the evidence was clearly sufficient to support the verdict of the jury as to felonious assault and carrying a concealed weapon and the verdict of the trial judge as to having a weapon under disability. Matthew Sloan was clear that Dante Allen was the man who shot him. The other witness provided circumstantial evidence which supported Matthew Sloan's testimony. The weapon was carried around that evening out of sight in Dante Allen's waistband, including time spent in a bar. So the carrying a concealed weapon charge was fully supported by the evidence.
 {¶ 26} The weapon under disability charge was tried to the trial judge in an apparent attempt to keep Dante Allen's criminal record away from the jury. Evidence with respect to the charge was received at the time of a prior jury trial when the jury was unable to reach a verdict. The evidence at the first trial also demonstrated that Dante Allen was the person who shot Matthew Sloan. The disability was based upon Dante Allen's having been convicted of robbery on December 13, 2004. Robbery, in violation of R.C. 2911.02, is an offense of violence and carries a legal disability to own a firearm in the state of Ohio. The parties stipulated the document which demonstrated the robbery conviction. Thus, all the elements of having a weapon under disability were proved.
 {¶ 27} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most *Page 8 
favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273.
 {¶ 28} Applying this standard, the verdicts were not against the manifest weight of the evidence. The seventh assignment of error is overruled.
 {¶ 29} Crim.R. 29(A) states:
 Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
 {¶ 30} Thus, a Crim.R. 29 motion is to be granted only when the evidence is insufficient to support a conviction. Applying the legal standards governing sufficiency of the evidence set forth above, we do not find that the evidence was insufficient to support the conviction.
 {¶ 31} The sixth assignment of error is overruled.
 {¶ 32} Turning to the first assignment of error, appellant also complains that the state of Ohio attempted to impeach its own witness Irvin Sloan. Irvin Sloan testified that he did not see the actual shooting. He had told the police that Bradley Rivers was the shooter because Rivers had been the person to start a fight with the Sloans and Rivers *Page 9 
had asked one of the others for a gun. Irvin Sloan never testified at trial that Dante Allen was the shooter and openly acknowledged at trial that he had told police that Rivers was the shooter. The state never attempted to impeach Irvin Sloan, but merely had him acknowledge that he had not seen the shooting and still had identified someone as the shooter. The trial court was well within its discretion to allow Irvin Sloan's testimony to be heard by the jury. Even if some theory of an error in admitting the testimony were posited, the testimony of Irvin Sloan was, at most, background evidence, not testimony as to elements of the crimes charged and hence not prejudicial error.
 {¶ 33} The first assignment of error is overruled.
 {¶ 34} In the second assignment of error, appellant asserts that the trial court should have stricken the testimony of Deshawn Price. Price's testimony again was, at most, pertinent to background information. Price was busy playing basketball, never saw a gun and did not see shots fired. The presence or absence of his testimony could not have affected the outcome of the trial and again not prejudicial error.
 {¶ 35} The second assignment of error is overruled.
 {¶ 36} In the third assignment of error, appellant attacks the trial court's handling of discussion of the fact of the indictment against Bradley Rivers and the indictment document. The trial judge accurately explained to the jury that an indictment is the process by which a criminal defendant is notified of the charge. The trial court also explained that the indictment document conveys the notice of the charges but does not constitute proof of charges or any facts in the indictment.
 {¶ 37} The charge to the jury on the subject of indictment was a standard charge which applied to the indictment against Dante Allen as well as the indictment against *Page 10 
Bradley Rivers. The charge could not conceivably have constituted prejudicial error. Rivers always acknowledged that he had once been charged with the felonious assault but eventually was permitted to plead to a charge of improper discharging of a firearm. The jury could not have been misled by the judge's jury charge regarding indictments.
 {¶ 38} The third assignment of error is overruled.
 {¶ 39} In the fourth assignment of error, appellant attacks the jury charges given on the subject of identification. The trial court charge was a correct statement of law.
 {¶ 40} Trial counsel requested that an identification instruction found in United States v. Telfaire (C.A.D.C. 1972), 469 F.2d 552, also be given. The Telfaire instruction is an excellent charge on the subject, but the trial court has the discretion to give or not to give it. See State v. Chinn (1999), 85 Ohio St.3d 548, and State v.Guster (1981), 66 Ohio St.2d 266. Since the trial court gave an excellent charge which addresses the issues of eyewitness identification and witness credibility, we cannot find an abuse of discretion in failing to give the Telfaire charge.
 {¶ 41} The fourth assignment of error is overruled.
 {¶ 42} The fifth assignment of error addresses a problem which occurred at trial when a witness for the state, Kelvin Matthews, indicated that he did not want to be testifying because he had received one or more threatening telephone calls from an unknown source or sources. The trial judge carefully considered the defense's objection about the testimony and sustained the objection. The trial judge then proceeded to tell the jury that there was no basis to believe that the threats were from Dante Allen or were directly associated with Dante Allen, based upon the trial judge's investigation into the matter. *Page 11 
 {¶ 43} While it is unfortunate that Kelvin Matthews inserted this issue into the trial, the trial court's curative instruction was sufficiently strong to minimize any risk that the jury would be affected by the issue. As a result, we cannot find that the trial court abused its discretion in refusing to grant a mistrial after the statement was made by Kelvin Matthews.
 {¶ 44} The fifth assignment of error is overruled.
 {¶ 45} All seven assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 McGRATH, P.J., and BROWN, J., concur. *Page 1